YELLOW MANUFACTURING ACCEPTANCE CORPORATION
v. CARL HANDLER AND ANOTHER.
C. A. WOLK, APPELLANT.

83 N. W. (2d) 103.

May 17, 1957—No. 37,028.

*George N. Guttmann* and *Charles Rubenstein,* for appellant.
*Frank Claybourne* and *Doherty, Rumble & Butler,* for respondent.

NELSON, JUSTICE.

The General Truck and Equipment Company of St. Paul, Minnesota, on September 12, 1952, sold and delivered to defendant Carl Handler one 1952 GMC truck and van for $7,651.81 upon terms and conditions set forth in a conditional sales contract. Defendant C. A. Wolk executed a written guaranty by which he guaranteed payment of all sums to be paid by Handler under the contract. The conditional sales contract and the guaranty was thereafter, for value, assigned to plaintiff, Yellow Manufacturing Acceptance Corporation,

and these instruments and the assignment were duly recorded in the office of the city clerk of Minneapolis on September 18, 1952.

Handler defaulted in his payments on June 12, 1953. Before reclaiming the property, plaintiff gave notice to Wolk of the default, demanding payment of sums required under the terms of the contract and his guaranty. Wolk refused to comply with the demand.

■ Neither the plaintiff's pleadings nor its evidence is of material aid in disclosing the exact date or the manner in which the truck and van was reclaimed. However, even without anything further, the inference would be that repossession occurred shortly after Handler defaulted. The record made on motions for summary judgment in the court below furnishes additional information upon which this court is entitled to place some reliance. Before this case went to trial, both plaintiff and defendant Wolk moved for summary judgment. An affidavit of Carl Handler was filed by Wolk as a supporting as well as an opposing document pursuant to Rule 56, Rules of Civil Procedure, which provides that either claimant or defending party may move for summary judgment with or without supporting affidavits. No affidavits were filed in opposition to the Handler affidavit, nor was any motion made to strike it, and it became a part of the record for the trial court's consideration in ruling on the motions. Attached to the order denying both of the motions is a memorandum which states that the court believed that there was a real issue of fact between the parties hinging upon a conversation or conversations, if any, which took place and other facts and circumstances at the time of the surrender of the chattel in question. It is evident from the memorandum that the trial court gave consideration to Handler's affidavit in reaching his determination to deny the motions and hear the controversy on the merits.

Handler states in his affidavit that repossession occurred on the afternoon of July 23, 1953; that one Bliss appeared in front of his business establishment, introducing himself as plaintiff's representative and demanding payment of $255.03, on the contract; that Handler stated that he did not have it and could not give it to him; that Bliss replied that he would have to take the truck, which was

parked across the street; that Handler told him to go ahead and take it; that Bliss then by telephone directed someone to pick up the truck, which was done within 15 or 20 minutes. Handler further states in the affidavit that no paper of any kind was handed to him or sent to him when the truck was taken, nor mention made of any kind of lien or words to that effect.

The district court file was introduced at the trial below but plaintiff voiced objection to the Handler affidavit being admitted in evidence, and it appears from the record that the parties stipulated that it was not to be considered as received in evidence with the other contents of the district court file. This affidavit, however, became a part of the record upon which the trial court denied the motions for summary judgment. At no time has there been an application to reopen the proceedings had on the motions for summary judgment, and the affidavit simply remains a part of the record for what it is worth. If the date and the circumstances of repossession were other than as therein stated, the plaintiff was free to state what he knew to be the correct date at the trial below.

We are not bound by stipulations concerning the legal effect of that which, from the record made, appears to stand as admitted facts. The court cannot be controlled by agreement of counsel on a subsidiary question of law. Questions of legal effect must be decided by the court uninfluenced by stipulations of the parties or counsel. Tynan v. KSTP, Inc. 247 Minn. 168, 77 N. W. (2d) 200.

It is undisputed that plaintiff had the van and truck sold at public auction February 23, 1954. The sale was conducted by the sheriff of Ramsey County, and they were sold to the highest bidder for $2,000. The record does not disclose that any notice of the sale, written or otherwise, was served upon Handler or Wolk. Plaintiff claimed a deduction due to necessary expenses in seizure, care, and sale of the property in the sum of $159.50, and this sum was not controverted. As a result $1,840.50 was applied against the unpaid balance on the contract leaving a deficiency of $3,770.16, which plaintiff sued to recover together with reasonable attorney's fees and expenses. Only Wolk answered in these proceedings. There was no appear-

ance by Handler, who at the time of trial was living in California. Wolk appeared only by his attorney.

Plaintiff did not avail itself of the remedy of foreclosure in a court proceeding as it might have done under its reservation of title in the conditional sales contract, by virtue of his common-law seller's lien coupled with the right to take a deficiency judgment should the property involved sell for less than the amount due. See, National Cash Register Co. v. Ness, 204 Minn. 148, 282 N. W. 827.

Plaintiff's case consisted of concessions by defendant Wolk in reply to requested admissions and documentary evidence consisting of the conditional sales contract; the guaranty; the assignment of both to plaintiff; and the district court file, subject to the stipulation as to the Handler affidavit. At the close of plaintiff's case, Wolk moved for a dismissal of the action on the merits on the ground that there had been a repossession of the personal property involved; that there was no showing that it had been repossessed for the purpose of foreclosing the seller's lien; that the mere taking without notice of its purpose other than to repossess canceled the contract and likewise the guaranty; and that the sale of the truck and van with the attendant procedure was immaterial and wholly without effect in protecting a seller's lien under the terms of the conditional sales contract. The trial court denied the motion and after defendant rested ordered judgment for plaintiff against Wolk, who appeals from the judgment.

The legal issues involved on this appeal are: (1) Does the bare act of repossession by the plaintiff, without notice of its intention regarding the purpose of the repossession, constitute a choice or election of remedies divesting plaintiff of the right to commence an action for the deficiency; (2) does the termination of the conditional sales contract and the release of the vendee by the acts of the plaintiff in effecting the repossession also release the defendant Wolk from liability on his contract of guaranty.

▬ A review of the Minnesota law on the subject of conditional sales contracts indicates that from the earliest cases up to the time of the decision in Midland Loan Finance Co. v. Osterberg, 201 Minn.

210, 275 N. W. 681, 113 A. L. R. 649, the vendor was held to an election of the following remedies: (1) He may reclaim the property; (2) he may treat the sale as absolute and sue for the debt; (3) he may bring an action to foreclose his lien. The assertion of one right was held to be an abandonment of the others. It is now the rule that a conditional seller who retakes the property which is the subject of a conditional sales contract in which title is reserved makes his election, constituting a rescission of the contract. He cannot thereafter sue for the purchase price except where, upon prompt and proper notice of his intent and purpose, he retakes the property for the purpose of enforcing the seller's common-law lien in an equitable proceeding to foreclose the same. See, Ahlers v. Jones, 193 Minn. 544, 259 N. W. 397; National Cash Register Co. v. Ness, *supra*.[1]

This court in Edward Thompson Co. v. Brown, 171 Minn. 483, 485, 214 N. W. 284, and Ahlers v. Jones, *supra,* commented that "We have no uniform conditional sales act" in this state. Reference was also made in the Thompson case to our adoption of the Uniform Sales Act, which in M. S. A. 512.56(2) provides that "The unpaid seller of goods, having a lien thereon, does not lose his lien by reason only that he has obtained judgment or decree for the price of the goods."

While the legislature has not to date adopted the uniform conditional sales act in this state, it has enacted certain statutory provisions applicable to conditional sales contracts. For instance, § 511.18, subds. 1 to 4, provides when such contracts shall be void as to creditors unless filed; that such filing constitutes notice to

[1]Minneapolis Harvester Works v. Hally, 27 Minn. 495, 8 N. W. 597; C. Aultman & Co. v. Olson, 43 Minn. 409, 45 N. W. 852; Keystone Mfg. Co. v. Cassellius, 74 Minn. 115, 76 N. W. 1028; C. W. Raymond Co. v. Kahn, 124 Minn. 426, 145 N. W. 164, 51 L.R.A.(N.S.) 251; Edward Thompson Co. v. Brown, 171 Minn. 483, 214 N. W. 284; Alden v. W. J. Dyer & Brother, 92 Minn. 134, 99 N. W. 784; Nelson v. International Harvester Co. 117 Minn. 298, 302 to 304, 135 N. W. 808, 810 to 811; A. F. Chase & Co. v. Kelly, 125 Minn. 317, 146 N. W. 1113, L. R. A. 1916A, 912; Holmes v. Schnedler, 176 Minn. 483, 223 N. W. 908.

all parties interested of the existence and conditions thereof subject to a 6-year limitation; and the method of satisfaction upon the records. Section 511.19, subds. 1 to 5, defines a conditional sales contract and deals with the retaking of possession of personal property sold under a conditional sales contract where title is reserved in the seller; when and how seller to give notice; and period and manner in which buyer may redeem on retaking. It is provided in subd. 4 that:

*"No act or agreement of the buyer before or at the time of the making of the contract, or any agreement or statement by the buyer in such contract, shall constitute a valid waiver of the provisions of this section, but the buyer, by an agreement in writing executed subsequent to his default in payment, may waive the right of redemption hereby given."* (Italics supplied.)

And application is limited in subd. 5 as follows:

*"This section shall not apply in any case where the conditional sale contract and the rights of the buyer thereunder shall be foreclosed by action in any court of this state."* (Italics supplied.)

It is clear that the legislature in the foregoing section recognized that the only remedy or means provided in foreclosing a conditional sales contract is by bringing an appropriate action in the courts of this state, there being no statutory authority or procedure of foreclosure prescribed in case the buyer defaults. As was said in Ahlers v. Jones, 193 Minn. 544, 547, 259 N. W. 397, 398: "A more desirable method must wait until the legislature sees fit to enact the uniform conditional sales act." It was stated in Holmes v. Schnedler, 176 Minn. 483, 223 N. W. 908, that the conditional seller retains an unpaid seller's lien which he may foreclose, and in Ahlers v. Jones, *supra,* that the seller foreclosing may become entitled to a deficiency judgment. It was also suggested in the latter case that in conjunction with foreclosing his lien the seller can best protect his interest by commencing two actions, in one of which he seeks to foreclose his lien and in the other of which he seeks to replevin the conditionally sold property and that he can do this without accomplish-

ing an election; however, that he should not bring the replevin action before he brings the action to foreclose, though he can bring the replevin action any time subsequent to the institution of his action to foreclose. It was later held in National Cash Register Co. v. Ness, *supra,* that a conditional seller who obtains possession of the conditionally sold property is not barred from an action of foreclosure when he states in the replevin complaint that the purpose of recovery is to enable him to foreclose his seller's lien. In such case no question of election of remedies is presented since possession is recovered pursuant to the remedy of foreclosure, and as an incident to the foreclosure proceeding the conditional seller may recover a deficiency judgment for the balance of the obligation. This court, however, in deciding the National Cash Register Co. case recognized the remedies available to the conditional seller as being (1) to repossess the conditionally sold property; (2) to sue for and to recover a judgment for the purchase price; (3) to foreclose his lien, citing Ahlers v. Jones, *supra;* Holmes v. Schnedler, *supra;* C. I. T. Corp. v. Cords, 198 Minn. 337, 269 N. W. 825; 17 Minn. L. Rev. 66.

Mr. Justice Loring, speaking for the court in the National Cash Register Co. case, made it clear that under our law as it now stands a suit by the conditional vendor in which actual possession of the property is gained is a bar to the assertion of his other remedies; but that the remedy of foreclosure is available unless it has been barred by the seller's election to retake the property, citing Minneapolis Harvester Works v. Hally, 27 Minn. 495, 8 N. W. 597, and Midland Loan Finance Co. v. Osterberg, *supra.* In referring to the latter case we said we had expressly left open the question of what happens to the seller's rights if instead of a suit for the price he first repossesses the property.

A conditional seller who obtains possession of the chattel sold is not barred from an action of foreclosure when he serves proper notice upon the buyer that the purpose of recovery is to enable him to foreclose his seller's lien. In such a situation no question of election of remedy presents itself, the seller having recovered possession pursuant to the remedy of foreclosure.

Plaintiff admits that the rule herein stated as to election of remedies was the law in Minnesota at one time but takes issue with the application of the election of remedies as applied to present-day conditional sales contracts. Plaintiff argues that after two conflicting Minnesota decisions, namely, Holmes v. Schnedler, *supra,* and First Nat. Bank v. Flynn, 190 Minn. 102, 250 N. W. 806, 92 A. L. R. 1272, this court in Midland Loan Finance Co. v. Osterberg, *supra,* clarified the law on the subject, rejecting the theory of an election of remedies and overruling Holmes v. Schnedler, *supra.* In that regard Holmes v. Schnedler, *supra,* has not been overruled. The First Nat. Bank v. Flynn case is wholly distinguishable for the reason that it involved a chattel mortgage and a mortgagee of chattels who had procured judgment against the mortgagor for the mortgage debt and thereupon levied upon the mortgaged property under a writ of execution but promptly released the property involved from the levy. The court held that by such release, there being no sale of the property as that of the mortgagor, this act or conduct did not result in an election of remedies by the mortgagee so as to bar its right to proceed under the mortgage with foreclosure according to its terms. Generally the court held in that case that a party is not bound as by an election unless he has pursued the chosen course to a determinative conclusion or has procured advantage therefrom or has thereby subjected his adversary to injury.

■ In Holmes v. Schnedler, *supra,* it was held that a suit brought to recover three monthly payments then in default, followed by an execution which was issued and returned unsatisfied, constituted an election by the seller. The Holmes case was overruled in that regard in Midland Loan Finance Co. v. Osterberg, *supra,* and the rule adopted that a conditional seller may sue for an installment of the price and afterwards, if unable to obtain payment, retake the property. In other words, it was decided in the Midland Loan Finance Co. case that the seller's suit for the price, under a conditional sales contract, is not inconsistent with his reserved title and the right to repossess the property upon the buyer's default. Hence, it is not an election of an available remedy which bars a subsequent

exercise of the right of repossession. The Holmes case was only overruled by the Midland Loan Finance Co. case "insofar, but insofar only" as it was at variance with the conclusions reached in the latter case. That decision did not touch at all the question of what happens to the seller's rights if, instead of a suit for the price, he first repossesses the property. That question was not before the court in the Midland Loan Finance Co. case and as the law then stood and as it stands now such retaking bars a later action for the recovery of the purchase price. Minneapolis Harvester Works v. Hally, *supra;* Keystone Mfg. Co. v. Cassellius, 74 Minn. 115, 76 N. W. 1028; Alden v. W. J. Dyer & Brother, 92 Minn. 134, 99 N. W. 784.

We have said repeatedly that the retention of title by the seller in a conditional sales contract is not a lien but a reservation of title and that, where personal property is sold upon the condition and reservation ordinarily contained in that class of contracts, title thereto shall not pass from the seller until the purchase price has been paid in full. We have also stated that the essence of a conditional sales contract is security for the seller while the beneficial use is in the buyer and that we see no good reason why, upon default of the buyer, the seller cannot resort to this security interest. Consequently, and equitably, the seller is afforded a remedy of foreclosure by appropriate action.

M. S. A. 511.19, subd. 5, provides that that section shall not apply in any case where the conditional sales contract and the rights of the buyer thereby made available to him shall be foreclosed by action in any court of this state. This court, however, has never said that a conditional sales contract is in effect a chattel mortgage and that it may be foreclosed under any statute applicable to those instruments which qualify as chattel mortgages. The legislature recognized this distinction when it placed subd. 5 at the end of § 511.19, and it also recognized the established decision law applicable to the conditional sales contract when it enacted §§ 511.18 and 511.19 as a part of c. 511 which also contains the statutory law of this state applicable to chattel mortgages. While our legislature has not adopted the uniform conditional sales act, it did in enacting

§§ 511.18 and 511.19 have in mind the difficulty of obtaining, under well-established but somewhat unyielding common-law rules, satisfactory results which would fairly protect both seller and buyer.

3 Williston, Sales (Rev. ed.) § 579d, suggests that a conditional sale should be treated as a mortgage:

"In view of the general adoption of equitable principles by courts of law today, either under statutes or without their aid, it is only the effect of early precedents that interferes with the application here of similar principles whatever the form of action. Some courts have so determined and have given the parties rights analogous to those of mortgagor and mortgagee. In almost all jurisdictions statutes have been enacted which remedy in whole or in part the defects of the common law in dealing with the question; especially the injustice to the buyer of permitting a forfeiture when most of the price has been paid has been guarded against in these statutes. These statutes are strictly interpreted in his favor and the protection given by them cannot under most authorities be contracted away in advance. But after default rights may be bargained away by a new contract. No result, however, can be regarded as satisfactory which does not both protect the seller in his right to the full price, and to his remedy against the buyer both on the debt and against the goods as security, in order to realize that price, and which does not also protect the buyer against any considerable forfeiture or penalty beyond the amount of the price. Such protection should be afforded the buyer in spite of any attempt made in the contract to surrender or waive it."

The same author suggests (§ 579e) that the seller should be allowed to prosecute an action for the price to judgment, and retain the property in the goods as security to enforce payment of the judgment. This suggestion has been carried out in M. S. A. 512.56(2), and given impetus by court decision in the Midland Loan Finance Co. case. The seller when electing to foreclose by an appropriate action becomes entitled to a default judgment after public sale, such as the court might order, including the securing of a deficiency judgment, and the buyer, if the chattel sells for more than the bal-

ance due, is entitled to any surplus in the seller's hands after costs and expenses and the amount of the lien have been satisfied. The rule this court established in the early case of Minneapolis Harvester Works v. Hally, *supra*, and later decisions that, whenever the seller first repossesses without suing for the purchase price of the property, it bars his further action to recover therefor is recognized both in Midland Loan Finance Co. v. Osterberg, *supra*, and National Cash Register Co. v. Ness, *supra*. Insofar as the Minneapolis Harvester Works, Keystone Mfg. Co., and Alden decisions establish the rule in this state that, if the seller instead of a suit for the price first repossesses the property, such conduct bars a later action for the purchase price, those cases have not been overruled.

The rule, however, that the election by the conditional seller to first repossess the property, instead of suing for the price, constitutes an election on the part of the seller has become a rule of property in this state and is presently so recognized. C. Aultman & Co. v. Olson, 43 Minn. 409, 45 N. W. 852. In Keystone Mfg. Co. v. Cassellius this court said (74 Minn. 117, 76 N. W. 1028):

"* * * While it was intimated in the last named case [C. Aultman & Co. v. Olson, *supra*] that there might be a doubt as to the correctness of the decision in Minneapolis Harvester Works v. Hally, we are confident that it is settled beyond controversy, in nearly all of the courts of this country, that where personal property is sold and delivered, with an agreement that the title thereto shall remain in the vendor until payment of the purchase price is made, it is a conditional sale, and the transaction cannot be held a mortgage; and it is equally as well settled that, upon the vendee's failure to comply with the conditions as to payment, the vendor may elect to retake the property, or may treat the sale as absolute, and bring an action for the price; but the assertion of either right is a waiver or abandonment of the other."

The foregoing cases and others are cited by the court in the Midland Loan Finance Co. case and later in the National Cash Register Co. case as authorities for the consistent holding of our court that, if the seller as a party to a conditional sale contract first repossesses

the property (without proper notice given of the purpose for which it is being reclaimed) instead of suing for the purchase price, it bars a later action to recover the purchase price. In view of what this court has determined in the Ahlers, Midland Loan Finance Co., and National Cash Register Co. cases, regarding the seller's right to sue for the purchase price or part of it without losing his seller's lien, also the seller's right to foreclose by appropriate action securing a deficiency judgment and the buyer's right to the surplus if any, implemented by § 512.56(2) of the Uniform Sales Act and §§ 511.18 and 511.19, we decline to give effect to certain clauses of mere form contained in the conventional conditional sales contract, intended to be without meaning or value (Keystone Mfg. Co. v. Cassellius, *supra*), leaving to those who by choice prefer to govern their terms of sale by use thereof the remedies afforded by our present decision and statutory law for the better protection of seller and buyer.

If changes from our present decision law applying to the conditional sales contract are to be made, in what has in effect become a rule of property of long standing, it is our view that such changes should await the legislative will and its consideration in the matter of effecting needed changes to correct whatever inequities presently exist, if any, as between seller and buyer as parties to such contracts.

■ Repossession of the property in the manner disclosed by the record barred assertion of plaintiff's other remedies and terminated the conditional sales contract. Since the contract came to an end, the buyer was released from further liability. The seller had no better rights against the guarantor than against the buyer. Since the buyer's liability under the contract was extinguished by seller's election to summarily repossess the property, the guarantor's liability was likewise discharged. In re Orpheum Circuit, Inc. (S. D. N. Y.) 23 F. Supp. 727.

The judgment entered below must be reversed.

Reversed.